*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF CALVIN MCWILLIAMS, by its
Personal Representative, CALVIN SINCLAIR,

        Plaintiff-Appellee,

v

CITIZENS UNITED RECIPROCAL EXCHANGE,

        Defendant-Appellant,

and

TITAN INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
May 14, 2026
1:45 PM

No. 372997
Wayne Circuit Court
LC No. 23-010908-NF

Before: BAZZI, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant Citizens United Reciprocal Exchange (CURE) appeals by leave granted[1] the Wayne Circuit Court's order striking one of CURE's affirmative defenses as a sanction for violating a discovery order. We vacate the order because the trial court abused its discretion by imposing such a harsh sanction, and we remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In June 2022, Calvin McWilliams applied for and received automobile insurance from CURE, and he listed on his application that he and his daughter were the only household members. In July 2022, he called CURE to change the address associated with his policy and to add a new vehicle. McWilliams stated that he was the only driver of the new vehicle, explained that he had

---

[1] *Estate of Calvin McWilliams v Citizens United Reciprocal Exchange*, unpublished order of the Court of Appeals, entered March 10, 2025 (Docket No. 372997).

moved to a new residence and no longer resided with his daughter, and denied that he resided with any new household members.

In August 2022, McWilliams was crossing a street as a pedestrian when he was struck by a motor vehicle and sustained multiple serious injuries. McWilliams submitted a claim for personal protection insurance (PIP) benefits to the Michigan Automobile Placement Facility (MAIPF) under the Assigned Claims Plan. The MAIPF assigned his claim to defendant Titan Insurance Company (Titan). McWilliams also submitted a claim to CURE for PIP benefits and uninsured motorist (UM) and underinsured motorist (UIM) benefits. His policy was referred to CURE's special investigations unit (SIU) for investigation because of possible undisclosed household members. In September 2022, CURE obtained recorded statements from McWilliams, in which he advised that he resided alone "but his grandson and his grandson's girlfriend 'be there.'" But in January 2023, CURE obtained another recorded statement in which McWilliams stated that when he moved at the end of June, he moved in with his grandson, Eric Bester Jr., and Bester's girlfriend, Daijour Lathan. He stated that Bester was the driver of the new vehicle on the policy, even though Bester did not have a valid driver's license. Bester only began driving the vehicle after McWilliams's accident in August.

In February 2023, CURE sent a letter to McWilliams, declaring that the insurance policy was void *ab initio* for the following reasons:

> As a result of an investigation it was determined that you failed to disclose your grandson, Eric Bester Jr, whose driving privileges have been suspended since October 28, 2021, and Daijour Lathan as household members and/or drivers at your address . . . . Additionally, you provided false and misleading information in a recorded conversation with CURE on September 13, 2022 when you stated that you reside alone at [your address] and that you are the only driver of both of your vehicles when in fact, Eric Bester Jr drives [one vehicle] with a suspended driver's license.
>
> This misrepresentation and/or omission are material facts, which affected CURE's ability to properly rate and underwrite the policy.

The letter was signed by Denise Guest under the title of "Underwriting Manager." CURE also sent McWilliams a refund check for his premium payments, and McWilliams negotiated the check.

In August 2023, McWilliams sued CURE for unpaid personal protection insurance (PIP) benefits and uninsured motorist (UM) and underinsured motorists (UIM) benefits. In its answer to the complaint, CURE raised 43 special or affirmative defenses, including the assertion that the insurance policy was void because of material misrepresentations and omissions about other household members and drivers. McWilliams also filed a claim against Titan for unpaid PIP benefits.

McWilliams died in October 2023, and plaintiff became his successor in interest as the personal representative of his estate. In December 2023, CURE moved for summary disposition, arguing that it did not owe plaintiff any benefits because the insurance policy was mutually rescinded after CURE discovered that McWilliams made material misrepresentations on the policy

-2-

application. After a hearing, the trial court denied the motion for summary disposition without prejudice.

During discovery, plaintiff filed a motion to compel CURE to produce its "PIP adjuster, UM adjuster, and underwriter" for deposition. Attached to the motion was an e-mail conversation between plaintiff's and CURE's counsel, in which plaintiff requested multiple times that CURE provide dates for depositions of several employees, "including Denise Guest (Underwriting Manager), Phalen Eisgrau (Bodily Injury Claims Representative), and Isaac Nzoma (PIP Representative)." CURE moved for a protective order, arguing that deposing the PIP and UM adjusters would be a waste of time because they played no role in the policy's rescission. Instead, CURE stated that it would "produce James Sullivan, underwriting manager, for testimony limited in scope to rescission of the CURE Policy in the instant litigation," and it requested that the trial court limit "the underwriter's deposition testimony beyond the scope of CURE's rescission of" the policy.

During a hearing on the motion in May 2024, counsel for CURE reiterated, "[W]e're willing to produce James Sullivan, the underwriting manager. He's the one that reviewed all the information, made the call on the material misrepresentation and decided to rescind. There [sic] we will produce the underwriting manager. He oversees the department, so he can speak to who made what call." The trial court indicated that plaintiff should be allowed to depose the PIP adjuster "because obviously this was the person who did the initial investigation which led to the case being referred to underwriting, which led to the recision [sic] decision." It also stated, "Certainly, the underwriter that he—I'll grant the order that he be deposed. . . . I'll go with the deposition of the underwriter and of the PIP adjuster, but I don't think we can—I don't think I can stretch this so far as to the UM adjuster." But it declined to limit the scope of the deposition testimony or otherwise grant CURE's motion for a protective order. The trial court's written order stated, in relevant part, as follows:

> IT IS HEREBY ORDERED that Plaintiff's Motion is Granted as follows:
>
> - The deposition of CURE's underwriter and PIP adjuster shall occur within 14 days of the date of this order.
>
> - The Court does not order the deposition of the UM adjuster to occur.

CURE produced Isaac Nzoma, who was its PIP adjuster, and James Sullivan for deposition.

During his deposition, Sullivan testified, "I am not an underwriter. I'm the manager of underwriting investigations . . . . I have never underwritten a file, sir." Sullivan further explained his role in CURE:

> [M]y role currently is to review the [special investigations unit (SIU)] reports and determine whether or not to take adverse action on a policy.
>
> * * *
>
> [W]hen the SIU investigation's report would come to me I review it, review the conclusions, determine whether or not misrepresentations would have either

resulted in rejection of the risk or would have resulted in a premium increase. If that's the case then a void letter would be issued to the insured, premium refund checks would be generated. Additionally, notice goes to the claims department advising them of the policy's voidance. Then same is noted in our software.

\* \* \*

My understanding is that the insurer has the ability to rescind the policy subject to review by the court.

But it was Guest, not Sullivan, who actually made the decision to rescind McWilliams's policy. When asked why he was the one subject to deposition instead of Guest, Sullivan explained, "Our understanding is that, that is company protocol that once I assumed the position in October of 2023, since I'm the one who at that point going forward was responsible for making these decisions, that I would be the one subject to deposition." After the lawsuit was filed, Sullivan reviewed the SIU report, the policy file, the underwriting rules, and the "void letter" that Guest sent to McWilliams. From that review, he "concurred with Ms. Guest's decision to rescind the policy." He stated that there had not been a calculation to determine whether the misrepresentation would change the premium amount because the failure to disclose a household member or driver did not comply with CURE's underwriting rules, which would result in rejection of the risk entirely. He explained that "had Mr. McWilliams disclosed Mr. Bester as a household member and driver of the vehicle, our underwriting department would have initiated a cancellation process and his failure to notify us of Mr. Bester deprived us of that opportunity." According to CURE's underwriting rules, the company "do[es] not write polices where there is a suspended driver in the household."

Sullivan never personally reviewed the recorded phone call in which McWilliams allegedly made the misrepresentation, but he "applied the same process that [he] applied when it was [his] responsibility to make those rescission decisions and that process would have included reviewing the report but not necessarily reviewing the phone call." He did not know the exact phrasing of the questions presented to McWilliams when he called to update his policy or McWilliams's exact responses to those questions. But he stated that the rescission was based not just on the phone call, but also on McWilliams's failure to respond to a subsequent letter that "identifies who CURE has listed as household members and drivers of the insured vehicles and notifies the insured they must contact us within 14 days if any of that information is inaccurate."

After the deposition, CURE offered to allow Guest to sit for a deposition, but plaintiff instead moved to strike CURE's rescission defense as a sanction for willfully violating the trial court's discovery order on the basis that CURE had misrepresented that Sullivan was the manager for the underwriting department, and that producing him for the underwriter's deposition severely prejudiced plaintiff by denying him the opportunity to complete discovery for the rescission defense. CURE responded with the assertion that "[a]t all relevant times, CURE and its counsel believed Mr. Sullivan was the best person to testify regarding the underwriting of this matter," and it reiterated its willingness to produce Guest for a deposition. During a hearing on the motion, plaintiff lamented that he was "in no better position than [he] was almost a year ago when we learned about this [rescission] defense" and that "there was nothing meaningful garnered from

[Sullivan's] deposition." CURE stated that Guest would not have been able to testify about any more information than Sullivan because she had access to the same documents as Sullivan when making her underwriting decision. She also would not have listened to the recording of McWilliams's phone call.

Plaintiff wanted to depose someone who had personal knowledge of the actual statement from McWilliams that formed the basis of the decision to rescind the policy, so he believed that deposing Guest would be a waste of time if she could not provide that information. CURE offered its SIU investigator for deposition, but plaintiff believed that the only person with knowledge of McWilliams's exact statements would be the person who actually answered McWilliams's phone call. Plaintiff had possession of a recording of that phone call but doubted whether it would be admissible at trial. The trial court stated that it would strike the affirmative defense, acknowledging that such a sanction was "harsh" but noted that CURE was "playing hide the ball" by producing the wrong person for deposition and delaying a case that was already over a year old.

CURE urged the trial court to consider monetary compensation as a more appropriate sanction under *Dean v Tucker*, 182 Mich App 27; 451 NW2d 571 (1990). The trial court briefly analyzed the request for sanctions under *Dean* and concluded, "[M]y ruling stands. And if the Court of Appeals decides . . . that I've abused my discretion, they won't hesitate to tell me." It entered an order striking CURE's rescission defense, and it denied CURE's subsequent motion to reconsider. This appeal followed.

## II. STRIKING A DEFENSE AS A SANCTION

CURE argues that the trial court abused its discretion when it decided to strike CURE's rescission defense as a sanction for violating its discovery order. We agree.

### A. STANDARD OF REVIEW

"Discovery sanctions are reviewed for an abuse of discretion." *Dean*, 182 Mich App at 32. "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. A trial court necessarily abuses its discretion when it makes an error of law." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). "Whereas questions of law are reviewed de novo, a trial court's findings of fact are reviewed for clear error. A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Ross v Auto Club Grp*, 481 Mich 1, 7; 748 NW2d 552 (2008) (quotation marks and citation omitted).

### B. THE *DEAN* FACTORS

When a party fails to comply with a discovery order, the trial court has broad discretion to impose whatever "sanctions as are just." MCR 2.313(A)(6). Just sanctions may include, for example, ordering a party to pay the reasonable expenses of its noncompliance, MCR 2.313(B)(2), striking certain claims or defenses, MCR 2.313(B)(2)(b), or even dismissing the action entirely, MCR 2.313(B)(2)(c). But the mere fact that the court rules contemplate an extreme sanction does not mean that it is appropriate in every case. *Dean*, 182 Mich App at 33. Rather, the trial court

must consider "the circumstances of each case to determine if such a drastic sanction is appropriate." *Id*. This Court has clearly established some relevant considerations:

> Among the factors that should be considered in determining the appropriate sanction are: (1) whether the violation was wilful or accidental, (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses), (3) the prejudice to the [party], (4) actual notice to the [party] of the witness and the length of time prior to trial that the [party] received such actual notice, (5) whether there exists a history of [the noncompliant party] engaging in deliberate delay, (6) the degree of compliance by the [noncompliant party] with other provisions of the court's order, (7) an attempt by the [noncompliant party] to timely cure the defect, and (8) whether a lesser sanction would better serve the interests of justice. This list should not be considered exhaustive. [*Id*. at 32-33.]

The trial court *must* consider the *Dean* factors before ordering dismissal as a sanction. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 315; 14 NW3d 472 (2023). See also *Duray Development, LLC v Perrin*, 288 Mich App 143, 165; 792 NW2d 749 (2010) (holding that a trial court abused its discretion when it failed to consider the *Dean* factors before disallowing a party to call any witnesses as a sanction). But if the sanction is less drastic, such as the decision to award the costs attributable to the party's noncompliance, then the trial court must consider the totality of the circumstances to determine if the sanction is appropriate, but it does not need to make specific findings under each *Dean* factor. See *Tolas Oil*, 347 Mich App at 307, 312.

CURE argues that the trial court abused its discretion because it decided to grant plaintiff's motion to strike the rescission defense before it considered any *Dean* factors, and because when it finally did address *Dean*, it did not consider all of the factors. But this argument is premised on the assumption that the trial court was required to consider each *Dean* factor because striking the rescission defense was akin to dismissal or an entry of default. The rescission defense was critical to CURE's theory of the case and, if successful, would preclude it from any liability for PIP benefits under the rescinded policy. But we do not agree that striking the defense was as severe a sanction as dismissal or an entry of default. See *Duray Dev*, 288 Mich App at 164 (holding that even disallowing a party to call any witness is not necessarily "tantamount to a dismissal"). CURE raised 42 other affirmative or special defenses in its pleadings that could completely or partially bar plaintiff's claims even if the policy was not rescinded.

Under these circumstances, striking just one defense as a sanction was not a functional equivalent to entering a default judgment against CURE. Therefore, the trial court did not abuse its discretion just because it failed to make specific findings under each *Dean* factor. It was only required to consider the totality of the circumstances to determine whether the sanction was appropriate. See *Tolas Oil*, 347 Mich App at 312. In doing so, however, the trial court reached a decision that fell outside the range of reasonable and principled outcomes because it was based on several clearly erroneous findings of fact.

It appears that the trial court's primary issue with CURE's decision to produce Sullivan instead of Guest for deposition was that Sullivan lacked knowledge of information that was critical to the rescission defense:

> This is just such a mess. There's a lot of problems with this case, but it was CURE who decided to produce Mr. Sullivan. That was their pick for the person who was going to provide this information. . . . He's an underwriting investigator. He's not even an underwriter. You can't be playing hide the ball on something as significant as the recision [sic] defense. . . . I'm not hearing anything that supports the conclusion that this is the person who should have been produced for such a significant issue.
>
> And there were key questions that he simply was not able to answer. So, yeah, I am going to strike the affirmative defense.

But Sullivan's deposition showed that, despite not being in the underwriting department himself, he was very knowledgeable about the underwriting process because he was trained by Guest, and he reviewed all the same documents that Guest would have reviewed to make the decision to rescind the policy. Sullivan was able to answer most of plaintiff's questions, described in detail CURE's internal documents and software, and clarified which employees in the company were responsible for each aspect of the rescission process. The only major questions that he could not answer for lack of personal knowledge related to processing McWilliams's premium refund check and, most importantly, the exact statements that McWilliams made to CURE when he called to update his policy. But the only employees who *would* be able to answer those questions would be in accounting and customer service. There was no evidence that even Guest or another underwriter would know that information, and to produce an accountant or the person who happened to answer McWilliams's call would be an even more obvious violation of the trial court's order to produce an "underwriter." Plaintiff was not entitled to receive a flawlessly detailed answer to every possible question that he could ask. We hold that the trial court's finding that Sullivan was unable to sufficiently answer plaintiff's questions was clearly erroneous.

Furthermore, there was little evidence to support the trial court's finding that CURE was "playing hide the ball" in this matter. Although CURE's counsel inaccurately described Sullivan as its underwriting manager in its response to plaintiff's motion to compel and during the hearing on that motion, there was no other evidence that its decision to produce Sullivan for deposition was made in bad faith. Sullivan testified that before he entered the position of manager of underwriting investigations in October 2023, CURE updated its "company protocol" so that the manager of underwriting investigations would be the person who would make all new rescission decisions and generally be subject to deposition on that subject. In other words, the responsibility for postclaim rescission decisions passed from the underwriting manager to the manager of underwriting investigations after CURE acted to rescind McWilliams's policy but months *before* depositions became an issue in this case. Regarding the first factor from *Dean*, 182 Mich App at 32, CURE should have known from its own records and organizational charts that Sullivan was not an underwriter. But the record supports that, even if this was a willful violation, it was still a good-faith effort to provide the information that plaintiff sought about the underwriting process, so this factor would not support a very harsh sanction.

-7-

The trial court also overlooked CURE's history of compliance with plaintiff's other discovery requests. See *id*. (second *Dean* factor). Plaintiff first asked for deposition dates of the underwriting manager, UM adjuster, and PIP adjuster in January 2024, and CURE's counsel responded within a reasonable time to explain that he would work with his client to determine those dates. Shortly thereafter, CURE's motion for summary disposition was set for hearing in February 2024, so CURE decided to wait to arrange for the depositions pending the results of that motion. CURE's subsequent refusal to produce the employees for deposition was based on its position that the UM adjuster and PIP adjuster's testimony would be irrelevant to the rescission defense and that the underwriting manager's testimony should be limited in scope. Those arguments were not frivolous dilatory tactics—the trial court even agreed that the UM adjuster's deposition was unnecessary. It disagreed as to the PIP adjuster and underwriter, and CURE produced the PIP adjuster for deposition as ordered.[2] See *id*. (sixth *Dean* factor). Overall, the record supports that CURE had good-faith reasons not to immediately comply with plaintiff's discovery requests, and it complied with the trial court's discovery order aside from its decision to produce the wrong person as the "underwriter." These circumstances do not justify a particularly harsh sanction.

CURE's decision to produce Sullivan for the underwriter deposition had no prejudicial effect on plaintiff and did not deprive him of notice about CURE's intent to introduce evidence of a material misrepresentation at trial. See *id*. (third and fourth *Dean* factors). When the trial court considered prejudice, it merely stated that plaintiff "has no idea what the alleged misrepresentation is after a year." That statement was clearly erroneous. Plaintiff was informed that the rescission defense was based on McWilliams's misrepresentations and omissions regarding other household members and drivers in CURE's pleadings back in September 2023, and indeed it was explained in CURE's February 2023 letter to McWilliams. And when CURE filed its motion for summary disposition in December 2023, it included the SIU report, which stated that McWilliams "denied that he resides with any new household members" when he called to update his policy and that the SIU also "obtained a recorded statement" in which McWilliams "advised that he resides alone . . . and is the only driver of both vehicles." CURE gave plaintiff the recordings of those calls. Plaintiff was unable to elicit deposition testimony about the exact wording of McWilliams's statements to CURE, but it would be inaccurate to say that plaintiff had "no idea" about the alleged misrepresentation or that any evidence relevant to the rescission defense would be an unfair surprise at trial. CURE's discovery violation simply did not have much impact on plaintiff's ability to respond to the rescission defense, which weighs against imposing a harsh sanction.

The trial court was particularly concerned that this case was over a year old and had not made much progress, but that delay was not entirely attributable to CURE. See *id*. (fifth *Dean* factor). The case was significantly delayed by McWilliams's death. Although he died in October 2023, plaintiff was not appointed as the personal representative of his estate until February 2024, after which he was substituted for McWilliams in this case. Discovery was delayed not just between plaintiff and CURE, but also between plaintiff and Titan. Titan even filed a motion requesting to extend the discovery deadline by three months because it had not yet received the

---

[2] We note that the depositions did not occur within the trial court's 14-day deadline, but there was no evidence indicating which party, if any, was at fault for that delay.

information that it requested from plaintiff, and it believed that all parties would benefit from the additional time. The trial court granted that motion, moving the discovery cutoff to July 2024. During the hearing on plaintiff's motion to strike in August 2024, the trial court acknowledged that CURE had no history of deliberately delaying the proceedings, but it still overemphasized the age of the case without sufficiently considering the dilatory circumstances that were out of CURE's control and weighed against imposing a harsh sanction.

In fact, CURE even attempted to cure its discovery violation, or at least to offer an additional deponent who would be more to plaintiff's liking. See *id*. (seventh *Dean* factor). After Sullivan's deposition, CURE offered to produce Guest for deposition, but plaintiff proceeded with a motion to strike instead. CURE reiterated its willingness to produce Guest in its response to the motion. During the hearing on the motion, CURE also offered the SIU investigator for deposition to identify the specific wording of the alleged misrepresentation, which would not have technically cured the violation of the trial court's order to depose an underwriter, but it would have addressed the concerns that motivated plaintiff's motion to strike. The trial court did not consider these mitigating circumstances.

After reviewing the totality of the circumstances, we conclude that a less severe sanction would have been more appropriate. See *id*. (eighth *Dean* factor). The trial court never specifically compared different sanctions, but it did acknowledge that striking the motion was "harsh" and rejected CURE's suggestion that, if anything, a monetary sanction would be more appropriate. After correcting the trial court's clearly erroneous factual findings and considering the mitigating circumstances that it overlooked, we hold that striking CURE's rescission defense was a disproportionately harsh sanction for its technical discovery violation. The sanction fell outside the range of reasonable and principled outcomes and amounted to an abuse of the trial court's discretion to impose an appropriate sanction under MCR 2.313.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mariam S. Bazzi
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle